IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: CELLULAR TELEPHONE EXTRACTION OF APPLE IPHONE, ASSOCIATED WITH ASSIGNED PHONE NUMBERS (434) 249-4573, (540) 256-3950 AND APPLE ID TUBRIAN252@GMAIL.COM | Case No. __3-24-mj-24__ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Mary Grace Echols, being first duly sworn, hereby depose and state as follows:

**I.      INTRODUCTION**

**A.      Purpose of Affidavit**

1.      I am investigating the criminal activities of Brian Lamont Turner ("TURNER"). As shown below, there is probable cause to believe that TURNER has engaged in Transportation for Purposes of Prostitution, in violation of 18 U.S.C. § 2421(a), and sex trafficking by means of force, threats, fraud, or coercion and conspiracy to commit sex trafficking by means of force, threats, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a) and 1594(a), and that communications, records, and information regarding this criminal activity is stored on the cellphone.

2.      This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device, as described in Attachment A—and the extraction from that property of electronically stored information described in Attachment B.

### B. Identification of the Device to be Examined

3. The property to be searched is a cellular phone, Apple iPhone, with assigned phone numbers (434) 249-4573 and (540) 256-3950, associated with Apple ID tubrian252@gmail.com. (referred to as "**Target Cellphone**").

4. The applied-for warrant would authorize the forensic examination of the **Target Cellphone** for the purpose of identifying electronically stored data particularly described in Attachment B.

### C. Agent Background and Experience

5. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Charlottesville Resident Agency out of the Richmond Field Office. I have been employed with the FBI since November 2017. As part of my training to become a Special Agent, I received approximately 18 weeks of instruction at the FBI Academy. Since graduating from the Academy, I have received further training in federal law, including, but not limited to, violations related to human trafficking.

6. As an FBI Special Agent, I have conducted and participated in investigations for various violations to include crimes against children and human trafficking. I have training and experience in interviewing and in interrogation techniques, arrest procedures, the execution of searches, evidence review, and various other procedures and investigative methods. In addition to using the aforementioned investigative techniques, during these investigations, I also have analyzed data, such as telephone records, subscriber records, IP address logs, and financial records. I have personally participated in the execution of search warrants involving the search and seizure of computer equipment, electronics, cloud-storage accounts, and social media accounts.

7. Through training, experience, and my participation in the subject investigation, I have become familiar with the methods used by those involved in sex trafficking to post advertisements for sexual encounters, how sex traffickers control their victims, and how profits are derived from such conduct. In general, sex trafficking is the recruitment, harboring, transportation, provision, or obtaining a person for the purposes of engaging in commercial sex acts in which the commercial sex act is induced by force, fraud, or coercion or in which the person is under the age of 18 years old. I have also become familiar with slang or coded terms used in connection with sex trafficking through reviewing of digital communications evidence obtained through seized electronics, review of online ads and posts, interviews with sex trafficking victims, speaking with experienced agents and investigators, and other means. Prior to becoming a Special Agent, I was assigned to the Atlanta, Georgia, FBI Office's Crimes Against Children and Human Trafficking Unit, providing tactical and administrative assistance for child sexual exploitation and human trafficking investigations.

D. **Sources of Information**

8. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses which I believe to be reliable. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for the limited purpose of establishing probable cause to conduct a search of and for the items described in Attachments A and B for evidence, contraband, and/or instrumentalities of the criminal conduct described herein. Additionally, unless otherwise indicated, wherever in this Affidavit I assert that an individual made a statement, that statement is described in substance herein and is not intended to be a verbatim recitation of such statement. Furthermore, unless otherwise indicated, all

statements contained in this Affidavit are summaries in substance and in part. Finally, this affidavit reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds and new information is gathered.

## II.     TARGET OFFENSES

9.     Based on the facts set forth below, I assert there is probable cause to believe the **Target Cellphone** has been, currently is, and will continue to be used in connection with and in furtherance of the Target Offenses listed below. The elements of these offenses are as follows:

   a. Transportation for Purposes of Prostitution, in violation of 18 U.S.C. § 2421(a):

      i. the defendant knowingly transported any individual in interstate commerce; and

      ii. the purpose of the travel was for the individual to engage in prostitution or any sexual activity for which a person can be charged with a criminal offense

   b. Sex Trafficking, in violation of 18 U.S.C. § 1591:

      i. the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, advertised, patronized, or solicited the victim;

      ii. the defendant knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause the victim to engage in a commercial sex act; and

      iii. the offense was in or affected interstate or foreign commerce.

   c. Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1594:

  i. The defendant knowing conspired with one or more other perrons to recruit, entice, harbor, transport, provide, advertise, maintain, patronize, solicit, or obtain by any means a person;

  ii. The defendant did so in and affecting interstate or foreign commerce; and

  iii. The defendant knew, or recklessly disregarded the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person to engage in a commercial sex act.

### III. PROBABLE CAUSE

#### A. Reports of Sex Trafficking by TURNER

10. In February 2023, the FBI initiated an investigation into Brian Lamont TURNER for sex trafficking and other criminal conduct in the Western District of Virginia. The FBI received several reports from local law enforcement agencies identifying TURNER and adult females who were suspected to be engaged in commercial sex. Additional adult females associated with TURNER have been identified from online commercial sex advertisements and interviews with witnesses. The investigation identified an account on SkiptheGames[1] registered to an email known to be used by TURNER, itsthatdrip@gmail.com. This Gmail account was used to post advertisements with photos depicting the adult females identified by law enforcement. Since the account was created on December 2, 2022, it appears TURNER has used this account to post hundreds of commercial sex advertisements in various cities in Virginia, North Carolina, South Carolina, Maryland, and Pennsylvania. Additionally, the investigation revealed another account

---

[1] Based on my training and experience, I know that "SkiptheGames" is a commercial sex website.

on SkiptheGames utilized by TURNER in 2019 and linked to email account biggsmumit@gmail.com. Using that email account, TURNER posted hundreds of advertisements dated January 18, 2019 through April 11, 2019[2] for cities in Virginia to include Charlottesville, Fredericksburg, and Richmond.

### B. TURNER's 2019 trafficking and coercion of AV5 and AV8

11. Interviews with several adult females revealed that TURNER has engaged in the Target Offenses since as early as 2019. One of the adult females, Adult Victim 5 ("AV5") described meeting TURNER in Charlottesville, Virginia in the fall of 2018, when he recruited her and coerced her to engage in commercial sex. AV5 described going to a hotel in Charlottesville, Virginia, where other adult victims were taking commercial sex dates at TURNER's direction. In April 2019, TURNER took AV5 and other adult victims from Charlottesville to Stafford County, Virginia to engage in commercial sex at his direction.

12. Another victim, Adult Victim 8 ("AV8"), described meeting TURNER in Charlottesville, Virginia at the beginning of 2019. In April 2019, TURNER arranged the transportation of AV8 to a hotel in Stafford, Virginia, where several adult women, to include AV5, were engaging in commercial sex for TURNER.

13. AV8 described that TURNER carried a firearm with him and was violent with some of the adult victims. AV8 witnessed TURNER become physically violent with an adult female, L.T., who appeared to be acting as TURNER's "bottom bitch."[3] Additionally, another adult

---

[2] TURNER was arrested by law enforcement in Stafford County on April 11, 2019, during a sex trafficking operation.

[3] In my training and experience, the term "bottom bitch" refers to a victim that a trafficker puts into a management position over other victims.

6

female told AV8 that TURNER was physically violent with her as well. AV8 was fearful of TURNER because of the violence she witnessed, his possession of a firearm, and his aggression towards AV8. Interviews conducted with additional victims and witnesses reveal other instances of physical violence by TURNER. Based on my training and experience as an investigator, I know that overt threats and intimidation are also common control tactics used by sex traffickers in dealing with their victims.

14. TURNER controlled every aspect of arranging commercial sex dates and posted commercial sex advertisements for AV5, AV8, and other adult females on commercial sex websites. TURNER utilized cellphones to take pictures of victims, post advertisements, and communicate with the customers. TURNER also made hotel reservations and paid for the hotels used to facilitate the commercial sex. Additionally, TURNER determined the schedule and provided AV5 and AV8 with drugs and food.

15. AV8 disclosed that TURNER took all of the money from the commercial sex dates, and even told AV8 that she was indebted to him for the drugs, food, and hotel rooms. Even after AV8 told TURNER she wanted to leave, TURNER told her she had to continue taking commercial sex dates to pay off her debt. Based on my training and experience as an investigator, I know that sex traffickers often control the conduct of their victims by serving as the sole source of income, transportation, and narcotics, as well as remaining in close proximity to limit opportunities for the sex trafficked individual to leave the situation.

16. Additionally, the investigation has revealed that TURNER targets female victims who have drug addictions, recruits them, and uses their drug addictions to control them. TURNER becomes the victims' source of drug supply in order to get them to follow his instructions and complete commercial sex acts. For instance, during their time with TURNER, AV5 and AV8 were

using drugs that TURNER provided them. Although AV8 was using cocaine before meeting TURNER, she believes that TURNER provided her heroin while she was engaging in commercial sex at his direction. AV5 described the feeling of "dopesickness"[4] as more extreme than the flu to include nausea and diarrhea, and AV5 would do anything to avoid feeling sick. TURNER provided AV5 heroin while she worked for TURNER.

### C. Stafford County Arrest and Seizure of Target Cellphone

17. On or about April 11, 2019, the Stafford County Sheriff's Office conducted a sex trafficking operation after receiving a report of sex trafficking by TURNER from an adult female victim. Law enforcement called a phone number associated with an online sex advertisement and spoke to TURNER on the phone. TURNER arranged a commercial sex date between the undercover officer and an adult female victim. Law enforcement arrived at the hotel and arrested TURNER. Prior to being taken into custody, TURNER attempted to destroy three cellphones in his possession by throwing them on the concrete. In an interview with Stafford County, TURNER identified the three cellphones that were in his possession as belonging to him and two adult females.

18. Following TURNER's arrest, officers went to the hotel room provided by TURNER, where they located AV8 and L.T. Two phones, to include the **Target Cellphone**, were recovered in the hotel room. During an interview, L.T. informed the officers that the **Target Cellphone** was her cellphone and subsequently provided consent to search the **Target Cellphone**.

19. Pursuant to L.T.'s consent, Stafford County conducted an extraction of the **Target Cellphone** recovered from the hotel room. Stafford County was not able to conduct downloads

---

[4] In my training and experience, the term "dopesick" refers to the physical side effects of withdraws from opioids.

of the cellphones in TURNER's possession due to the damage he caused to the cellphones. Based on the above information, I submit there is probable cause to conclude TURNER utilized cellphones to facilitate AV5 and AV8 to engage in commercial sex. As described, there is probable cause that TURNER utilized the **Target Cellphone** to engage in the target offenses.

20. Your affiant recently became aware that Stafford County still had the extraction for **Target Cellphone**. On April 17, 2024, Stafford County provided the extraction of **Target Cellphone** along with the corresponding consent to search form filled out by L.T. in April 2019. On April 17, 2024, your affiant loaded the extraction into the analyzer software and immediately observed that the **Target Cellphone** is linked to an Apple ID possibly utilized by TURNER, tubrian252@gmail.com. TURNER and L.T. are both listed as possible users of the device. Upon seeing both individuals listed, I halted my search of the **Target Cellphone**. While L.T. gave consent for the search of **Target Cellphone**, because TURNER was also a possible user of the device, I am seeking a search warrant out of an abundance of caution.

### IV.     ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Cellphone** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Cellphone**

consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Target Cellphone** to human inspection in order to determine whether it is evidence described by the warrant.

### V.   REQUEST FOR ORDER TO SEAL

24.     It is respectfully requested that this Court issue an order sealing for 90 days all papers submitted in support of this application, including the application, affidavit, and search warrant, and the requisite inventory notice. Sealing is necessary because the items and information to be seized are relevant to an ongoing investigation, and premature disclosure of the contents of this Affidavit and related documents may jeopardize the effectiveness of the investigation.

### CONCLUSION

25.     Based on the aforementioned information, your Affiant respectfully submits that there is probable cause to believe that evidence of criminal offenses, namely, violations of 18 U.S.C. §§ 1591, 1594, and 2421(a), is located on the person of TURNER and in the **Target Cellphone** and that this evidence, listed in Attachment B to this affidavit, constitutes evidence, fruits, and/or instrumentalities of the foregoing criminal offenses.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

                                                 Respectfully submitted,

                                                 */s/Mary Echols*
                                                 MARY ECHOLS
                                                 Special Agent
                                                 Federal Bureau of Investigation

Received by reliable electronic means and sworn and attested to by telephone on April 18, 2024.

_____
C. KAILANI MEMMER
UNITED STATES MAGISTRATE JUDGE

3-24-mj-24

## ATTACHMENT A

Cellular telephone extraction of Apple iPhone, with assigned phone numbers (434) 249-4573 and (540) 256-3950, associated with Apple ID tubrian252@gmail.com (referred to as "**Target Cellphone**"). This warrant authorizes the forensic examination of the **Target Cellphone** for the purpose of identifying the electronically stored information described in Attachment B.

3-24-mj-24

# ATTACHMENT B

    a.    All records found on the **Target Cellphone** described in Attachment A that relate to violations of 18 U.S.C. §§ 1591, 1594, and 2421(a) including:

    a. Records, documents, communications, photographs, and information on the **Target Cellphone** described in Attachment A related to sex trafficking, commercial sex, and interstate travel;

    b. The telephone number assigned to the **Target Cellphone**;

    c. Telephone numbers of outgoing telephone calls or incoming telephone calls;

    d. Electronic address books, contact lists, telephone number lists, buddy lists, or any other software program used for the electronic compilation of contact information;

    e. Stored electronic communications, or alphanumeric messages, including but not limited to emails, picture messages, text messages, instant messages, social media messages, or voicemail, whether drafted, sent, received, opened or unopened, read or unread, and/or forwarded, discussing or relating to commercial sex and/or interstate travel.

    f. Information relating to who owned, possessed, used and/or exercised dominion or control of the **Target Cellphone**;

      g. Records of browsing history, including websites visited and data exchanged from/to those websites, related to commercial sex.

      h. Types, amounts, and prices of commercial sex dates as well as dates, places, and amounts of specific transactions;

      i. All GPS and location data;

      j. Encrypted, deleted, and unallocated files on electronic media that contain any of the information listed above.

b. Evidence of user attribution showing who used or owned the Target Cellphone at the time the items described in this warrant were created, edited, or deleted, including but not limited to logs, phonebooks, saved usernames and passwords, documents, and browsing history.

c. Records evidencing the use of the Internet Protocol (IP) addresses and mobile IP addresses including:

      a. Records of Internet Protocol addresses used;

      b. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.

4